336 So.2d 457 (1976)
FRUEHAUF CORPORATION, a Corporation D/B/a Fruehauf Division, Fruehauf Corporation, Appellant,
v.
AETNA INSURANCE COMPANY, a Corporation, Appellee.
No. Z-226.
District Court of Appeal of Florida, First District.
August 19, 1976.
*458 Ralph W. Nimmons, Jr., Douglas D. Chunn, of Ulmer, Murchison, Ashby & Ball, Jacksonville, for appellant.
Richard W. Kreidler, Jacksonville, for appellee.
BOYER, Chief Judge.
From an adverse judgment entered by the trial court sitting as the trier of the *459 facts, appellant, defendant in the trial court, takes this appeal. Although appellant raises three points in its brief, the primary issue is whether the trial court erred in finding negligence.
On the Tuesday or Wednesday before Thanksgiving, 1973, David Valiante delivered his 1972 Ford diesel truck-tractor to appellant for brake repairs. The brakes were repaired but the truck was stolen from appellant's premises over the Thanksgiving weekend. Appellee, Mr. Valiante's insurer, paid Mr. Valiante and sued appellant.
At trial, the central issue concerned the quality of appellant's security precautions. A chain link fence encloses the premises at the top of which are three strands of barbed wire. At the point where the fence crosses a drainage culvert, there is a hole sufficiently large for a man to gain access. Numerous mercury vapor lights illuminate the premises, but the effectiveness of the lights is lessened by the presence of trailers located in close proximity to the fence. Other security measures conducted by employees of appellant included a check of the premises, discussions of security procedures, and written security instructions given to all employees. Further, because of previous thefts, the keys to all power vehicles were to be removed, tagged, and placed in a box in the service area accessible only to supervisory personnel. Two of appellant's employees testified that the keys to Mr. Valiante's truck were given to him on the afternoon after the theft, but Mr. Valiante and his driver both testified that they never received the keys.
After suffering thefts in September and October of 1972, and April of 1973, appellant decided to hire a guard service, contracting with Overland Express, Inc. The theft of the Valiante truck occurred during the early morning hours of Monday, November 26, when thieves apparently cut a large hole in the fence. The Overland guard who was supposed to be patrolling the area wrote in his daily report that there were two dogs in the fenced area. Inasmuch as neither Overland nor appellant used guard dogs, the dogs were either strays or belonged to the thieves. Whatever their origin, the dogs frightened the guard who, upon hearing them bark, did not go onto appellant's premises after 12:40 a.m. on the morning of the theft.
The first aspect of the trial court's finding of negligence questioned by appellant concerns the appropriate standard of care. Because this case involves a bailment for mutual benefit, the bailee is required to exercise ordinary (reasonable) care under the circumstances to protect the bailor's property. As noted by the Third District Court of Appeal: "The test of liability of a bailee for intrusted goods which are lost or stolen is whether the bailee exercised that degree of care toward the goods that a reasonably prudent person would bestow on his own goods." (Hollander v. Nolan Brown Motors, Inc., Fla.App. 3rd 1973, 272 So.2d 9) Appellant insists that it met that test as evidenced by the extensive security measures taken by it, particularly the use of a guard service.
For purposes of analysis, we find it helpful to place the alleged negligence of appellant into two categories: Negligence in the hiring and supervision of the guard service, and negligence in maintaining other proper security measures. In considering each category, we bear in mind the proper test applicable to such cases, i.e., whether the bailee exercised that degree of care toward the goods that a reasonably prudent person would bestow on his own goods. Although the use of a guard service may well be desirable, we do not construe the standard of ordinary or reasonable care to be such as to require a bailee in all situations to employ such a service to fulfill its duty to protect a bailor's property. A bailee is not an insurer of the property delivered into its keeping and is not liable for the loss of the thing bailed, except where there is a breach of the duty of the requisite degree of care. (See 4 Fla.Jur. 187, "Bailments", Section 10) Therefore, when a bailee does take the voluntary step of hiring a guard service, it should not be held to a higher standard of care than *460 would have been imposed had it not contracted with a guard service at all. In more general terms, when one does something he is not obligated to do, he should not be held liable for failure to do more.
While appellant was under no obligation to hire a guard service, it could nevertheless, under appropriate circumstances, be held liable for negligence emanating from the hiring or maintenance of the guard service. For instance, the general rule seems to be that an employer of an independent contractor may be liable to one injured as a result of the contractor's fault where it is shown that the employer was negligent in selecting a careless or incompetent person with whom to contract. (See Annotation at 8 A.L.R.2d 267, 268 (1949)) Appellee in its brief argues that very point. However, there is no evidence in the record to suggest that the guard service hired by appellant had a history of incompetence and/or carelessness nor that, even if such a history of incompetence had been established, that appellant knew or should reasonably have known thereof.
An employer may also be held liable for the negligence of a guard service where the relationship between the employer and the guard service is one of master-servant rather than employer-independent contractor. (See Annotation at 38 A.L.R.3d 1332, 1336 (1970)) The relationship is determined by the right of control concept. When the employer retains the right of control over the personnel supplied, the master-servant relationship is created, and the employer will be held vicariously liable for the negligence of the hired personnel acting within the scope of employment. The employer-independent contractor relationship (as distinguished from master-servant relationship) is established when no such right of control is retained. Appellee argues that the master-servant relationship is present in the case sub judice. However, though there is evidence that appellant set certain minimum standards for the guards to be used, there is no substantial evidence which would detract from the status of Overland Express, Inc. as an independent contractor.
There is a third theory by which appellee seeks to impose liability upon appellant for the negligence of the guard service. Under that theory, appellant, though under no obligation to hire a guard service, once having done so, had a duty to operate the service non-negligently. That theory is in keeping with the general statement of negligence law which imposes an obligation on everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he is undertaking. (23 Fla.Jur. 260, "Negligence", Section 13; see also Shealor v. Ruud, Fla.App. 4th 1969, 221 So.2d 765) In Shealor v. Ruud, supra, the court held that the defendant-city having voluntarily elected to install a warning system at a railroad crossing, had a duty not to permit its operation in a manner calculated to cause injury to others. The underlying basis for the decision in the Shealor case was the reliance placed by the aggrieved party upon the act voluntarily undertaken by the party sought to be charged. The plaintiff in that case implicitly asserted the general public's reliance on the defendant's warning system, claiming that it was misleading, confusing and a nuisance. Sub judice, there is no indication in the record whatsoever that the truck owner was aware that appellant employed a guard service nor that he relied thereon. Further, as above discussed, the evidence was insufficient to "pierce the independent-contractor veil".
There being no viable theory supported by the record by which the negligence of the guard service could have been imputed to appellant, the judgment in favor of appellee may be affirmed only if there is other evidence of negligence, independent and distinct from the negligence of the guard service. We find that there was. The trial court may well have concluded that the built-in hole in the fence by the drainage culvert, the lighting system which could have been considered inadequate, and the missing key to the Valiante truck constituted *461 negligence on the part of appellant. Although negligence of the guard service could clearly have been found to have been a proximate cause of the loss of the Valiante truck, the trial court could also have found that the separate negligence of appellant was a concurring proximate cause. As has often been held, findings by a trial court will not be disturbed unless there is a lack of substantial evidence to support the court's conclusion. (Strawgate v. Turner, Sup.Ct.Fla. 1976, Case No. 47,136, opinion filed June 30, not yet reported).
Accordingly, the decision of trial court is
AFFIRMED.
McCORD, J., and SCHLEGEL, LEW E., Associate Judge, concur.