# Third District Court of Appeal

## State of Florida

Opinion filed June 30, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2131
Lower Tribunal No. 15-24515
_____

**SG 2901, LLC.,**
Appellant,

vs.

**Complimenti, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Mavel Ruiz, Judge.

Arnaldo Vélez, P.A., and Arnaldo Velez, for appellant.

Billbrough & Marks, P.A., and Geoffrey B. Marks, for appellee.

Before EMAS, C.J., and LINDSEY, and BOKOR, JJ.

LINDSEY, J.

Appellant SG 2901, LLC appeals from a final judgment, entered after a bench trial, ordering payment to Appellee Complimenti, Inc. for services rendered in connection with renovations of a condominium unit. SG argues that Complimenti acted as an unlicensed contractor, and therefore, the trial court erred in enforcing the parties' contract. Because the trial court's findings are supported by competent substantial evidence, we affirm.

## I.   BACKGROUND

In September 2013, SG purchased a two-story condominium unit on Brickell Avenue. Simeon Garcia is SG's sole manager. It is undisputed that Garcia hired Nuria Anor, Complimenti's principal, to decorate the apartment. Initially, Garcia's plans were modest; he wanted to polish the floors and have the unit ready for occupancy soon. Over time, however, Garcia's plans became more extensive and included significant renovations. According to Anor's testimony below, she told Garcia that for the type of work he wanted, he would need licensed professionals. In response, Garcia told Anor to find the necessary people because he traveled a lot.

As instructed, Anor gathered several licensed professionals to meet with Garcia, including a licensed general contractor, a licensed architect, and a licensed A/C contractor. Though Garcia disputed that such a meeting took place, every other person at the meeting testified that it occurred. As set forth in the order on appeal: "All testified that as a result of the meeting, they

2

were hired by the Defendant, and were left with the impression, if not the direct instruction, to deal with Plaintiff on all matters moving forward- specifically with respect to payment. The Court finds that this meeting occurred." Anor also described other meetings she and Garcia had at the unit with licensed professionals, and she testified that Garcia always had the last word. Further, Garcia admitted that Anor would regularly send him emails asking for authorization with respect to everything on the project.

After the renovations were complete, Garcia refused to pay Anor in full because he was not satisfied with the quality of the work.[1] Complimenti, in turn, sued SG for breach of contract, unjust enrichment, foreclosure of construction lien, foreclosure of equitable lien, and promissory estoppel. SG asserted as an affirmative defense that Complimenti was not a licensed contractor and therefore barred by statute from enforcing the parties' contract. SG also asserted a counterclaim to disgorge the payments Garcia had already made, in addition to counterclaims for unjust enrichment and breach of contract.

---

[1] It is undisputed that Garcia paid Anor but withheld the full amount. When asked about this by the trial judge, Garcia stated "I've never argued that, nor have I ever argued with [Anor] that I'm not going to pay her. I just wanted the finishing to be of the quality that she had promised me."

Following a three-day bench trial, the court entered final judgment in favor of Complimenti. In its detailed, nine-page order, the trial court found that the record evidence "conclusively establishes" that Garcia hired Antonio Luvara, a licensed general contractor, and that "Complimenti was acting as the owner representative, facilitating the project while the owner was out of the country." Accordingly, Complimenti was awarded a judgment in the amount $181,377.38. SG timely appealed.

## II.   ANALYSIS

"We review a judgment rendered after a bench trial to ensure that the trial court's findings of fact are supported by competent, substantial evidence." Haas Automation, Inc. v. Fox, 243 So. 3d 1017, 1023 (Fla. 3d DCA 2018) (citing Underwater Eng'g Servs., Inc. v. Util. Bd. of City of Key West, 194 So. 3d 437, 444 (Fla. 3d DCA 2016); Emaminejad v. Ocwen Loan Servicing, LLC, 156 So. 3d 534, 535 (Fla. 3d DCA 2015)). Pure legal conclusions are reviewed de novo. Id.

On appeal, SG raises two grounds for reversal. First, SG argues that because Complimenti is not licensed as a contractor, it cannot enforce its

4

contract with SG.  SG also argues that Complimenti is not entitled to a lien. For the reasons that follow, we reject these arguments.[2]

SG relies on section 489.128(1), Florida Statutes (2020), which makes contracts entered into by unlicensed contractors unenforceable:

> (1)   As a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor.

SG maintains that Complimenti acted as a contractor, as defined in section 489.105(3), Florida Statutes (2020), which provides in pertinent part as follows:

> (3) "Contractor" means the person who is qualified for, and is only responsible for, the project contracted for and means, except as exempted in this part, the person who, for compensation, undertakes to, submits a bid to, or does himself or herself or by others construct, repair, alter, remodel, add to, demolish, subtract from, or improve any building or structure, including related improvements to real estate, for others or for resale to others; and whose job scope is substantially similar to the job scope described in one of the paragraphs of this subsection.

The trial court relied on Full Circle Dairy, LLC v. McKinney, 467 F. Supp. 2d 1343, 1346 (M.D. Fla. 2006), which sets forth a two-pronged

---

[2] SG also argues that the trial court should have awarded judgment in its favor on its counterclaims.  We reject this argument without further discussion.

analysis of the definition above. "First, the individual must 'construct, repair, alter, remodel, add to, demolish, subtract from or improve' a structure . . . ." Id. Second, "the individual who engages in such an undertaking must have a job scope that is 'substantially similar' to a job scope described in subsections (a) through (q) of § 489.105(3), which includes 'general contractor', 'roofing contractor' and 'specialty contractor'." Id.

The trial court found that the "record evidence presented in this matter conclusively establishes that the licensed General Contractor, Antonio Luvara, hired by the Defendant, was the 'person qualified for, and solely responsible for, the project contracted for' and that any individual who[] performed any service in connection with the project was hired and approved by the Defendant directly." The court further found that "the record evidence establishes, by the greater weight of the evidence, that Complimenti's job scope was specifically limited to providing design/decorating services and acting as the point of contact in a representative or agency capacity on Defendant's behalf. Any hiring and/or contracting of work done at the property - licensed or not - was done and approved directly by SG himself and or the licensed General Contractor, Mr. Antonio Luvara."

We agree with Complimenti that these findings are supported by competent substantial evidence, and therefore, the trial court did not err in concluding that Complimenti was not a "contractor" as defined in section

6

489.105(3). Consequently, section 489.128(1), which prohibits an unlicensed contractor from enforcing a contract, is not applicable.

SG also argues that the trial court erred in concluding that Complimenti was entitled to a lien. We disagree. The trial court relied on section 713.03(1), which provides that "[a]ny person who performs services as . . . interior designer . . . has a lien on the real property improved for any money that is owing to him or her for his or her services used in connection with improving the real property or for his or her services in supervising any portion of the work of improving the real property, rendered in accordance with his or her contract and with the direct contract."

Here, the trial court found, based on the testimony below, that Complimenti's services were those of an interior designer.[3] Because the court's findings are supported by competent substantial evidence, we also affirm as to Complimenti's entitlement to a lien.

III. CONCLUSION

The lower court's thorough final judgment, which contains factual findings based on credibility determinations derived from live witness

---

[3] The court also determined that the services were provided for residential application, and therefore, no license was necessary. See § 481.229(6)(a) (exempting from licensure "[a] person who performs interior design services or interior decorator services for any residential application").

7

testimony, is supported by competent substantial evidence.  We therefore affirm in all respects.

Affirmed.